ALLEN ROWE v. STATE.

174 So. 820.
En Banc.
Opinion Filed June 4, 1937.

*L. W.. Hardy* and *William J. Ray,* for Plaintiff in Error; *Cary D. Landis,* Attorney General, *Roy Campbell,* Assistant Attorney General, *Dewey A. Dye,* Assistant State Attorney and *Robert E. Willis,* for the State.

BROWN, J.—Marvin B. Walker was killed in Manatee County about midnight on the night of September 21, 1934. The grand jury returned an indictment against plaintiff in error charging him with the murder of Walker and he was convicted of murder in the first degree with recommendation to mercy. Judgment of conviction was duly entered and plaintiff in error was sentenced to life imprisonment. To this judgment of conviction he sued out writ of error to this court, and said judgment was reversed on account of the admission of certain testimony which this court held to be inadmissible. See Rowe v. State, 120 Fla. 649, 163 So. 22. Upon the second trial of the case, the jury again found the defendant, plaintiff in error here, guilty of murder in the first degree with a similar recommendation, which was followed by a similar judgment and sentence. From this latter conviction, this second writ of error is sued out.

It is unnecessary to review the evidence in the case. The only assignments of error which required any discussion are those based on questions asked the witness Simmons. If the action of the court in overruling the objections to these questions did not constitute reversible error, the judgment of conviction should be sustained. Those assignments of error based upon the denial of the plaintiff in error's motion for a directed verdict, and for a new trial, need not detain us, as the evidence was sufficient to sustain the verdict and the action of the court in denying said motions was justified.

The witness Simmons was a brother-in-law of Rowe, and had driven him to the scene of the crime and shortly thereafter drove him to Fort Myers. Simmons testified as a witness for the State. After he had been on the stand for some time, the Assistant State Attorney propounded to him several leading questions, which were permitted by the

court over the objections of the defendant. It is these rulings of the trial court and these questions to which the main argument of counsel for plaintiff in error has been addressed. Simmons had testified that after the killing of Walker he took Rowe in his automobile to Rowe's house. After staying there about an hour, Rowe said he wanted witness to take him down to Fort Myers; that he wanted to go down there on some business; that witness's wife was present and that Rowe referred to her as "sis." Whereupon the State asked the witness this question:

"I will ask you to state whether or not he said to her 'Sis, I have killed a man and I have got to go'?"

To this question defendant objected on the ground that the State Attorney was "attempting to impeach his own witness by reading excerpts from former testimony." The court overruled the objection and the witness answered: "I don't remember if that was his language or not; I would not say."

This was a leading question. It is not at all clear that it was asked for the purpose of *impeaching* the witness, for the witness had given no adverse testimony and was not subject to impeachment. It was within the discretion of the court to permit this question.

The second question assigned as error was this: "I am asking you, Mr. Simmons, for the purpose of refreshing your memory, if you do not recall that you stated to me and Mr. Singeltary in my office last night that when the car stopped at the crossing, you know there at the corner, Mr. Rowe said to you 'There may be some trouble and if there is, and if I am alive, don't leave here because there may be two dead ones'?"

The defense objected to this question upon the grounds (1) that if asked for the purpose of an impeachment; the proper predicate had not been laid; and (2) that the ques-

tion had been propounded in such a way that the witness could not answer it without using the words of the State Attorney; that it was putting the answer in his mouth.

The second ground of objection is in effect that the question was a leading question, which it was. We will deal with that feature of this question later on. The first objection, that a proper predicate had not been laid, was without merit, for the time, place, persons present and words said to have been used are embraced in the question. The court overruled the objection to the question and the witness answered: "I remember Mr. Dye reading that last night in there, but I have been trying to get it placed and I just can't remember about it. I have been thinking about it all day."

Motion of defendant to strike the answer was denied. The third question assigned as error was not objected to, neither was a motion made to strike the answer, so we will pass that by.

The fourth question assigned as error was: "For the purpose of refreshing your memory and bringing the matter to your attention, I ask you whether or not it is true that as you and Mr. Rowe drove away from the scene of the homicide that Mr. Rowe said to you, 'I wish I had had time to have laid the s—— of a b———— out,' and you asked him what he meant by that and he said: 'Cross his arms like a dead man ought to be'?"

The only objection made to this question by the defense was on the ground that it was "grossly leading." The objection was overruled and the witness answered: "No, I don't remember. I am swearing in this case to what I remember and nothing else."

The fifth question was: "I will also ask you, for the same purpose, in order to refresh your memory and bring the matter to your attention, if you do not now recall, that you

asked Mr. Rowe how he knew that Mr. Walker had been killing his stock, and he said to you that he had gone to Tampa and seen a spiritualist and the spiritualist had told him that it was Walker killing his stock?"

After this question was asked, the following appears in the record: "Mr. Ray: I wish to object if the Court please, to that question, for the simple reason that he is reading that question from the previous testimony at the previous trial of this case, quoting it from the previous testimony, and that it is not for the purpose of refreshing his memory or calling the matter to his attention, but I say it is for the purpose of getting that testimony before this jury. He might refresh the memory of a witness on cross examination in that manner, but we insist on direct examination he cannot read the former testimony of the witness for the purpose of getting it before the jury under the guise of refreshing the memory of that witness.

"Court: I don't know whether he is reading from the former testimony or not. I will have to instruct the jury and under proper instructions it is permissible for him to refresh the memory of the witness. Gentlemen of the jury, you will have to take the testimony from the witness stand and you will not get it from any questions or statements of counsel; the testimony is what is said by the witness. The objection is overruled, you may answer the question."

The defendant took an exception and the witness answered: "He mentioned something about killing stock. I don't remember whether the other was said or not."

We will take up later the propriety of the State Attorney's thus attempting to refresh the memory of the witness. The assertion of counsel for the defendant that this question was asked for the purpose of getting previous testimony before the jury, even if correct, which the record does not necessarily show, was rendered harmless by the

instructions of the court to the jury above quoted. The expressed purpose of the State Attorney in asking this question was to refresh the memory of the witness and on this record we will treat that as the real purpose. Whether the memory of the witness could be refreshed in that manner remains to be discussed.

The sixth question to this witness was: "For the purpose of refreshing your memory, I will ask you if you did not state last night in my office to Mr. Singeltary and myself that Rowe told you that he had killed his horse, three dogs and had taken some of his hogs?"

Counsel for defendant objected to this question "for the same reason previously assigned."

The seventh question assigned as error was: "Mr. Simmons, do you recall whether or not on the trip from the corner to Mr. Rowe's home, Mr. Rowe said something to you about if you told it he would put you in his shoes?".

This question was objected to "because it is grossly leading."

The court overruled the objection and the witness answered: "I do remember he asked me to stick by him—I remember that—I don't remember the other."

Before entering upon these questions the State through its counsel asserted that it had been taken by surprise and decided to ask these questions to refresh the recollection of the witness. No effort was otherwise made to show what the witness actually testified to on the previous hearing nor what he had said to counsel for the State in their conversations with him, the court having ruled that the State could not impeach its own witness, whose testimony as given was not adverse to the State.

While it does not appear that the answers to these questions were of any substantial benefit to the State or harmful to the defendant, counsel for defendant contend that the

court erred in permitting these questions because (1) they were leading, (2) that they were not allowable under the rule of refreshing the memory of a witness, and (3) that they were formed from answers of the witness read from testimony of the former trial and constituted an attempt on the part of the State to get such evidence before the jury under the guise of refreshing the memory of the witness, and (4) that the questions were an attempt to impeach the witness. In support of these contentions counsel rely mainly upon three of our previous decisions. The first case cited is the case of Adams v. State, 34 Fla. 185, 15 So. 905, wherein Mr. Justice TAYLOR, writing the opinion of the court said:

"Our statute on the subject of the impeachment of a witness by the party producing him is as follows: 'A party producing a witness shall not be allowed to impeach his credit by general evidence of bad character but he may, *in case the witness prove adverse,* contradict him by other evidence, or prove that he has made at other times a statement inconsistent with his present testimony; but before such last mentioned proof can be given, the circumstances of the supposed statement, sufficient to designate the particular occasion, must be mentioned to the witness, and he must be asked whether or not he made such statement.' Section 1101, R. S. (now 4377 C. G. L.) It is very erroneous to suppose that, under this statute, a party producing a witness is at liberty to impeach him whenever such witness simply fails to testify as he was expected to do, without giving any evidence that is at all *prejudicial* to the party producing him. The impeachment permitted by the statute is only in cases where the witness proves *adverse* to the party producing him. He must not only fail to give the *beneficial* evidence expected of him, but he must become *adverse* by *giving evidence that is prejudicial to the cause*

*of the party producing him.* When a party's witness surprises him by not only failing to testify to the facts expected of him, but by giving *harmful evidence* that is contrary to what was expected, then, as is the purpose of this law, he is permitted to *counteract the prejudicial effect of the adverse testimony* of such witness, by proving that he has made statements on other occasions that are inconsistent with his present *adverse evidence.* It never was the purpose of this statute to allow a party to put up a witness for the purpose to get from him *beneficial* evidence, and upon his simple failure to testify to the desired facts, to permit him to get the *benefit* of those *expected facts,* as substantive evidence, through the mouth of another witness, under the guise of *impeachment.* Evidence adduced in this manner is nothing more than the veriest hearsay, and is inadmissible. Even where a witness is properly impeached by proof of conflicting statements made on other occasions, the *conflicting statements* as made to and detailed by the *impeaching witness* should not be considered as substantive evidence in sustenance of the party's cause who produced the impeached witness; but has weight only *for the purpose of counteracting or annulling the harmful effects of the adverse testimony in the cause given by the impeached witness that is inconsistent wtih his statements testified to have been made on other occasions."*

The above is a fine statement of the law on the subject dealt with, but for the reasons hereinabove intimated we think the foregoing questions were asked for the avowed purpose of refreshing the memory of the witness and must be measured by the rules relating to that subject. To hold otherwise would be to unnecessarily attribute bad faith to counsel for the State. Indeed, the first of these questions might more properly be held to be a question concerning the conduct and statements of the defendant almost imme-

diately after the killing, and while leading in form it was such a question as the trial judge unquestionably could permit within the exercise of his discretion. Furthermore, the answer of the witness was not harmful to the defendant.

The defendant cites the case of Sylvester v. State, 46 Fla. 166, 35 So. 142. In that case the witness was asked if he did not testify to a certain fact at the coroner's inquest. An objection was sustained. This court held the statement sought to be elicited was not in conflict with the witness' testimony on the trial and therefore was not admissible for the purpose of impeachment. Further commenting on this question, this court said:

"The further contention of counsel upon these assignments is that the questions were proper for the purpose of refreshing the memory of the witness. Authorities may be multiplied holding that where a witness has by his testimony surprised the party calling him he may be interrogated as to previous statements made by him which conflict with his present testimony, the reasons given being that the witness' memory may be refreshed and he be led to the truth or to an explanation of the seeming conflict in his statements, that the party calling him may explain to the jury his reason for calling the witness, or that the effect of his present testimony may be neutralized. The latter grounds are pertinent only to cases where the witness' testimony is prejudicial, and rest on much the same reasons as the right to impeach by proving the former statements of the witness by other witnesses. These have no application to the case at bar where *the witness was neither unwilling nor adverse* to the defendant. If admissible here the questions were proper solely for the purpose of recalling the truth to the memory of the witness and enabling him to testify correctly." (Italics supplied.)

It will be observed from the language above quoted that

the witness in question was neither unwilling nor adverse to the party asking the question. In this case the witness Simmons, while not an adverse witness, was evidently, from the record of his testimony as a whole, a reluctant and unwilling witness. At least the record lays the basis for this inference and such was probably the inference drawn by the trial court.

Plaintiff in error also relies upon the case of Sloan v. State, 70 Fla. 216, 70 So. 23. That case dealt with an attempt on the part of the State to impeach its own witness by reading excerpts from his testimony on a former hearing. Such is the statement in the first headnote. In the opinion this subject was dealt with in the following language:

"The State was permitted over objections to ask its own witness, if on a former hearing he had not testified that Pinkey had it in for the deceased. The witness had testified negatively that he knew of no trouble existing between the accused and the deceased, and the State did not bring itself within the rule, as laid down in Adams v. State, 34 Fla. 185, 15 South. Rep. 905, for the impeachment of its own witness. The evidence was not admitted for the purpose of refreshing the memory of the witness, conceding the question elicited competent testimony, seeing that all that was adduced was the fact that the witness had on a former trial given certain testimony, and it was not even attempted to prove on this trial the truth or falsity of that testimony. It was neither a predicate for impeachment nor direct evidence, and should not have been admitted."

Among the cases cited by counsel for the State is the case of Coker, *et al.,* v. Hayes, 16 Fla. 363, the opinion in which was written by Mr. Justice WESTCOTT. In that case this court held that: "A leading question should be permitted only when it appears essential to justice; where a

witness is persistently unwilling, or biased, or there exists some like reason, the court should allow it. In some cases a party may and should be permitted to lead his own witness. This matter, however, is in the discretion of the court. It is not ground of error, and Appellate Courts universally refuse to review such exercise of discretion."

Further dealing with this question, the Attorney General cites the case of Anderson v. State, 88 Fla. 93, 101 So. 202, wherein this court said: "The first question is presented by four assignments of error. All of them are upon rulings of the trial court overruling objections to questions, propounded by the State Attorney to witnesses, upon the ground that they were leading. It is within the judicial discretion of the trial court to permit leading questions to be propounded to witnesses and the exercise of that discretion is not reviewable on writ of error by an appellate court. Stinson v. State, 76 Fla. 421, 80 South. Rep. 506; Padgett v. State, 64 Fla. 389, 59 South. Rep. 946; Penton v. State, 64 Fla. 389, 59 South. Rep. 343; Johnson v. State, 64 Fla. 321, 59 South. Rep. 894; Camp v. State, 58 Fla. 12, 50 South. Rep. 537; Falk v. Kimmerle, 57 Fla. 70, 49 South. Rep. 504. The conduct of the examination of the witnesses, made the basis of assignments, was not such as to warrant a holding that there was an abuse of the discretion reposed in the trial court in overruling objections to questions upon the ground that they were leading. They seem to have been little, if any, more than were necessary to elicit from the reluctant witnesses facts within their knowledge."

These two cases are sufficient to show that we should not reverse the case at bar even though the questions referred to were leading in their nature. Certainly it cannot be said that the trial court in this case abused its discretion in this respect. While not legally adverse and hence be-

yond the reach of impeachment, the witness Simmons was apparently reluctant and evasive, and the court was within the exercise of its discretion in permitting the State Attorney to propound the questions above referred to in so far as the particular objection, that they were leading, is concerned. Furthermore, as no facts of value to the State were elicited in answer to these leading questions, the plaintiff in error had no cause to complain on that score.

Finally we come to the question as to whether or not the court below was in error in permitting those questions to be asked for the avowed purpose of refreshing the memory of the witness which inquired of the witness whether he had made certain statements on the former trial, or when, being interrogated by counsel for the State in their office he had made certain statements during the pendency of this trial. He was not asked as to the truth of his former statements, but whether he had so stated. As to those statements made on a former trial, under oath, however, as to which some of the questions were directed, the presumption might be indulged that if he had made such statements under oath, they were probably true; but we will confine our consideration to the avowed purpose for which these questions were asked, which was: "For the purpose of refreshing your memory," and "bringing the matter to your attention." Necessarily some degree of latitude should be allowed in the examination by a party of his own witness when that witness takes the party by surprise and proves to be an unwilling and evasive witness, where the effort is not to impeach but to get the witness to tell all that he knows. For that purpose we think it was proper to refresh the recollection of this witness by recalling to his mind what he had previously testified to on a former trial or had stated to counsel previous to the giving

of his testimony. In the case of Winchester v. State (Ala.), 102 So. 535, it was said:

"It is insisted that it was error to permit the solicitor to question Ed Crowe as to what he had stated in the grand jury room, and also to permit the solicitor to propound leading questions to this witness. As to the first proposition, the law is well settled that a witness may be questioned as to his testimony before the grand jury, for the purpose of refreshing his recollection, and this was the case here, and the solicitor explicitly stated to the witness that this was his purpose. As to the second proposition, it does not appear that the trial court erred in permitting leading questions to Ed Crowe. It is well known that it frequently becomes necessary to lead a witness who is unwilling to testify, and the Code of Alabama (Section 4018) rightly gives this discretion to trial courts. There would seem that no abuse of this discretion appears in this record."

The Supreme Court of the United States in Hyde v. United States, 225 U. S. 347, 56 L. Ed. 1114, held that witnesses for the Government in a criminal trial may be asked on direct examination, for the purpose of refreshing their memory, as to conversations with the District Attorney, and as to previous written statements made by them to certain Government representatives. In 70 C. J. at pages 579-580 it is said:

"It is permissible, for the purpose of refreshing the recollection of a witness, to direct his attention to statements previously made or testimony formerly given by him, particularly where it appears that he is trying to evade questions or is unfriendly toward the party calling him as a witness and such party is surprised by his testimony. However, the court may, in its discretion, exclude a question as to previous statements or testimony of the witness; it is not proper, under the guise of refreshing the recollection of a

witness, to inquire of him concerning statements made by him several months after he was informed of the occurrences to which they related; a party is not entitled to refresh the recollection of a witness ,by calling his attention to prior statements where the party is not. surprised by the testimony of the witness and the effect of the inquiry would be to bring before the jury prior hearsay statements of the witness on the very issue on which the case turns; and where a party has been afforded full opportunity to refresh the recollection of a witness in the absence of the jury by directing his attention to his testimony at a former trial, and the witness has answered that his recollection is not refreshed by such testimony, the party is not entitled to attempt to refresh the memory of the witness in. the same way in the presence of the jury."

Many cases 'are cited in support 'of this quotation from the text. It appears to us that this case falls within the first sentence of the text above quoted and that it does not fall within any of the exceptions stated in the remainder of such text.

See also People v. Sherman, 133 N. Y. 349, 31 N. E. 107.

Two juries have found the defendant guilty of murder in the first degree, and, eliminating all of the questions and answers above discussed, the evidence was unquestionably sufficient to sustain the verdict. Nor do we think that the court abused its discretion in permitting said questions to be asked.

No reversible error appearing in the record the judgment of the court below is affirmed.

Affirmed.

WHITFIELD, TERRELL and BUFORD, J. J., concur.

ELLIS, C. J., and DAVIS, J., concur specially.

DAVIS, J. (concurring).—The reversible error, if any, would have been the Judge's refusal to exclude the jury on

defendant's motion to that effect, if defendant had made one, when the State, in the course of purporting to refresh the memory of the witness began to inquire into matters. not otherwise admissible before the jury. But no such motion was made, therefore the point has been properly treated as stated in the opinion of Mr. Justice BROWN, in which I concur with the observations herein made.

ELLIS, C. J. (concurring specially).—I think that the reversible error statute, Sec. 4499, C. G. L. 1929, applies, but I am also of the opinion that the character of questions to which exception was taken should not be approved.