HOWELL, CHARLES COOK, Jr., Associate Judge.
Red has ever been the color of flamboyant significance; and has been cast in a variety of roles.
“Red” in our glorious national emblem “is for valor”, acknowledges Charles' Sumner in his November 19, 1867, “Are We a Nation ?”
Red the color of the fox chased in Mother England and through Virginia’s verdant countryside; and the color of “The setters from Kerry, and Cork and Kildaire . . . They’re red and they’re rare! [1]
Red the color of the “morn”, in Shakespeare’s Venus and Adonis, “that ever yet betoken’d wrack to the seaman, tempest to the field”.
And red the accusatory and incriminating color of the T-shirt worn by defendant, Lonnie Carl Whitley,[2] about 5:00 *100 o’clock in the morning of April 3, 1971, in the area of Big Daddy’s Bar at 83rd Street in the City of Miami, as he approached an automobile in which one Thomas H. Mc-Tye was fast asleep.
The approach culminated in some activity as best described by McTye himself:
“Well, I didn’t know the time until after-wards, but what awoke me was someone pulling at my wallet. I sat up and found three colored males one on each side of me and one in the front seat looking back at me. They had tried to get at my wallet and I tried to stop them. When I did, I got hit across the bridge of the nose . . . three times. .I never did allow them to have my wallet. I fought them off as best I could and every time I went to stop the fella from grabbing my wallet I got a hit in the nose and finally the pocket ripped away. The three of them jumped out of the car and one of them said, ‘I got it’. They jumped out of the car.”
McTye pointed out Whitley in the courtroom as “one of three gentlemen or parties participating in this robbery”, after commenting about the broken nose administered to him in the above described altercation; declaring that Whitley “was wearing a red T-shirt”, and again that Whitley “is the same fellow before the Court.”
Whitley and compadres, after lifting McTye’s wallet, “got out of the car” and “started running south on Biscayne Boulevard” ; thereupon, declared McTye, “I got out and started to chase them south on Biscayne Boulevard. It was approximately SO to 75 feet south of Big Daddy’s parking lot a City of Miami police officer arrived on the scene and I explained to him that I was just robbed and pointed out the three men who was still in sight”.
At the end of the hot pursuit Whitley and his accomplices were apprehended. The lighting “was fair, street lights on Biscayne Boulevard, four lane highway right on the pavement”; all in all the hue and cry took some 20 to 25 minutes; and Whitley “was in view of (McTye’s) eyesight at all times.”
Thus must Whitley’s assignment of .error that “the trial court erred in denying the defendant’s motion for judgment of acquittal at the close of all the evidence” fall before the principle that it is the “jury’s function as the trier of fact ... to evaluate the evidence, weigh the credibility of the witnesses, and resolve conflicts in the testimony. They can draw or refuse to draw inferences from the evidence presented. Their determination is accorded great weight and will not be disturbed on appeal except for the lack of substantial competent evidence.” Ford v. State, Fla.App. 3, 1971, 251 So.2d 562, 563.
His central and frontal assault thus blunted, Whitley valiantly tries each flank.
The one flank takes the charge (supplemental assignment of error 3) that “the trial court erred in not allowing certain cross-examination and impeachment of the alleged victim”, Thomas H. McTye; but this attempted “cross-examination” and asserted “impeachment of the alleged victim” was in the legally innocuous areas of attempted proof that 17 years earlier, in 1954, McTye had been dismissed by the Sheriff’s Department; that he was “divorced at the present time”; and, as a matter of fact, was in arrears in certain support money payments required of him. *101 “It thus appears that”, with respect to each challenged facet of McTye’s cross-examination and impeachment efforts by Whitley’s attorney, “the defendant’s counsel sought to impeach the witness upon an immaterial matter, which is not allowable.” Stinson v. State, 1918, 76 Fla. 421, 80 So. 506, 511.
The other flank is attacked by supplemental assignment of error 6,[3] protesting that “the trial court erred in not allowing into evidence a prior inconsistent statement of the alleged victim after the proper predicate had been established.” Not only were “the time (and) place . involved in such supposed contradiction” fatally omitted from the predicate, Clinton, et al. v. State, 1907, 53 Fla. 98, 43 So. 312, 316; Rowe v. State, 1937, 128 Fla. 394, 174 So. 820, 821. The statement was not a written one (having been unsigned by the witness), but only the defense investigator’s written recording or memorandum of what he understood the witness to have told him. Perhaps even more importantly, pages 194 and 195 of the transcript of the record before this Court show that both the defendant and the jury had the full benefit of the essential contents of such recording or memorandum, because the investigator was permitted to testify “basically what happened.This is basically what it is.” Hardly necessary is it, therefore, to recall the rule that although “the witness may be impeached by showing prior contradictory statements as to material testimony, . . . the law grants a trial court broad discretion in cross examination on questions affecting motive, interest or animus.” Taylor v. State, 1939, 139 Fla. 542, 190 So. 691, 694.
No abuse of that discretion, or other reversible error inhering in this appeal, the judgment under review is
Affirmed.

. “The Red Dogs” by Patrick Reginald Chalmers.

. We must of necessity now construe the facts most favorably to the State, the *100 jury having spoken in finding the defendant guilty of robbery, Booker v. Lima, Fla.App. 3, 1966, 182 So.2d 642, 643; Hodges v. Nofsinger, Fla.App. 3, 1966, 183 So.2d 14, 15. This appeal by him is from the resultant judgment of conviction and imposition of a five year sentence in the State Prison, “credit to be given for time served in the Dade County Jail therein, to-wit: Twenty-six (26) days.”

. There were other assignments of error which are either comprehended within the ones expressly dealt with, or which were not argued orally or in the briefs; those in the latter category being thereby abandoned. Rule 3.7 i, FAR, 32 F.S.A.; and 2 Fla.Jur., Appeals, Vol. 2, Sec. 130, pp. 468-469.