346 So.2d 1020 (1977)
Thomas NOWLIN, Jr., Petitioner,
v.
STATE of Florida, Respondent.
No. 47061.
Supreme Court of Florida.
May 26, 1977.
*1021 Richard L. Jorandby, Public Defender, and Martin H. Colin and Craig S. Barnard, Asst. Public Defenders, for petitioner.
Robert L. Shevin, Atty. Gen., and Basil S. Diamond, Asst. Atty. Gen., for respondent.
BOYD, Justice.
In the Circuit Court of Orange County petitioner was convicted of robbery, use of a firearm in the commission of a felony and aggravated assault and sentenced to life imprisonment, fifteen years and five years respectively. The District Court of Appeal, Fourth District, decided[1] to vacate the convictions of use of a firearm in commission of a felony and aggravated assault because *1022 they were included in the greater offense of robbery.[2]
By writ of certiorari we are reviewing the District Court opinion because it conflicts with the decision in Crawford v. State, 70 Fla. 323, 70 So. 374 (1915).[3]
In the case under review petitioner had been shot by a policeman in the course of the robbery for which he was convicted. Without being advised of his constitutional rights as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the petitioner was interviewed by police officers while he was in the hospital and made incriminating statements under circumstances which appear to us to raise some questions of whether the statements were voluntarily given. At trial he elected to take the stand in his own defense. On cross-examination he denied under oath that he had made any incriminating statements. The trial court permitted the State on rebuttal to introduce his prior incriminating statements to impeach his testimony and despite petitioner's objection that no showing of voluntariness had been made would not allow an inquiry into the voluntariness of the statements. Being not persuaded there was error, the District Court of Appeal affirmed holding that, in the event there was error, it was harmless.
We are required to grant to all accused persons the constitutional rights provided by the United States Constitution as construed by the United States Supreme Court and such rights as may be required by the Florida Constitution, statutes and rules of court. Over the last few decades special attention of all state courts has been focused on United States Supreme Court decisions which have evinced an increased concern for human rights.
In Crawford, supra, this Court held that incriminating statements made after arrest in the presence of a magistrate or investigating coroner who failed to advise the accused of his constitutional rights could not be admitted into evidence to impeach his trial testimony, just as the statements were not admissible in the prosecution's case-in-chief because of failure to advise the accused of his constitutional rights. This Court additionally stated that involuntary confessions are not admissible for impeachment of the defendant's trial testimony. Id., 70 So. at 377, 378. Petitioner asks that we reaffirm Crawford, adopt it as the controlling law of this State and reverse the decision of the District Court of Appeal, Fourth District. For solution of the problem and to conform to the United States Constitution as construed by the United States Supreme Court we turn to Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) and Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954).
In the Walder case the Court permitted evidence inadmissible in the case in chief to be used for impeachment purposes. The Court said, "It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths ... there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility." Id., at 65, 74 S.Ct., at 356. Walder, on trial for sale of narcotics, testified on direct examination that he had never sold or possessed narcotics. On cross-examination he reiterated this assertion. The government then introduced evidence that, in connection with an earlier proceeding, a heroin capsule had been found in his possession. The trial judge admitted this evidence over defendant's objection that the heroin capsule had been obtained through an unlawful search and seizure. In permitting the testimony of prior possession of heroin under conditions which constituted unlawful search and *1023 seizure the judge instructed the jury to consider the tainted testimony only for impeachment of the defendant's credibility and not as to his guilt. The U.S. Supreme Court agreed, establishing the principle that evidence illegally obtained may be admitted into evidence against a defendant who denies under oath at trial the existence of such evidence, so long as the use of the evidence is not permitted to be used to establish guilt but limited to impeachment.
Harris, supra, is almost directly on point with the case before us. The Court relied upon Walder, supra, and held that a statement which was inadmissible against a defendant in prosecution's case in chief because the defendant had not been advised of his rights to counsel and to remain silent prior to making the statement but which otherwise satisfied legal standards of trustworthiness was properly usable for impeachment purposes to attack the credibility of the defendant's trial testimony.
At his trial Harris denied he had made a sale of narcotics to an undercover officer. On cross-examination he was asked whether he had made statements which the prosecution specified in its questioning immediately after his arrest. The statements referred to by the prosecutor contradicted, in part, his trial testimony. Upon saying he could not remember the incriminating statements the defendant's attorney requested the written material used by the State in the impeachment questions to be included in the record on appeal. The Court approved, but instructed the jury to consider use of the statements attributed to the defendant by the State only for impeachment of the defendant's credibility and not for determination of guilt.
In the opinion authored by Chief Justice Burger the Court said in part:
"At trial the prosecution made no effort in its case in chief to use the statements allegedly made by petitioner, conceding that they were inadmissible under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The transcript of the interrogation used in the impeachment, but not given to the jury, shows that no warning of a right to appointed counsel was given before questions were put to petitioner when he was taken into custody. Petitioner makes no claim that the statements made to the police were coerced or involuntary.
"Some comments in the Miranda opinion can indeed be read as indicating a bar to use of an uncounseled statement for any purpose, but discussion of that issue was not at all necessary to the Court's holding and cannot be regarded as controlling. Miranda barred the prosecution from making its case with statements of an accused made while in custody prior to having or effectively waiving counsel. It does not follow from Miranda that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, provided of course that the trustworthiness of the evidence satisfies legal standards. Id., 401 U.S. at 224, 91 S.Ct. at 645.
"Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. See United States v. Knox, 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969); cf. Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. Had inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and impeachment.
"The shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances. We hold, therefore, that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements." Id., at 225, 226, 91 S.Ct. at 645.
*1024 We are unsure of precisely what the Court means by statements the "trustworthiness" of which "satisfies legal standards." Harris at 224, 91 S.Ct. 643. Surely, at the very least the Court means that the statements must be voluntarily given. Therefore, whenever the state, in order to impeach a defendant's credibility, chooses to present evidence of a defendant's incriminating statements which are inconsistent with trial testimony of the defendant and which are inadmissible in the case-in-chief because of the failure of custodial officers to give Miranda warnings, the statements must be shown to be voluntary before they may be admitted.
In Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) it was held that the Fourteenth Amendment requires that an initial determination of voluntariness be made, outside the hearing of the jury, before a confession may be allowed to be considered by the jury. Though Jackson did not involve incriminating statements offered for the purposes of impeachment we believe its principle applies to this case. It was error for the trial judge not to make a determination of voluntariness outside the presence of the jury once petitioner objected to introduction of the statements for failure of a showing of voluntariness. As in other situations, the State has the burden of proof to show by a preponderance of the evidence that the confession was voluntarily obtained. See Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); Johnson v. State, 294 So.2d 69 (Fla. 1974).
We cannot agree with the District Court of Appeal that, at the most, harmless error was committed by the trial court. Reviewing courts may not regard constitutional error as harmless if there is a reasonable possibility that the error may have contributed to the accused's conviction or if the error may not be found harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The admission of the incriminating statements, by undermining the credibility of Nowlin, destroyed a great part of his defense. Unless the jury was fairly sophisticated the statements were probably considered on the issue of guilt.
Asking a jury to use incriminating statements to determine credibility but not guilt is a distinction the Crawford court thought a jury should not be forced to make. The United States Supreme Court in Harris did not agree. To conform to federal standards we recede from Crawford to the degree that it forbids introduction of incriminating statements made by an accused, uninformed of his constitutional rights, for purposes of impeachment. We reaffirm Crawford to the extent that it requires that incriminating statements be voluntarily made before they may be used for impeaching the credibility of a defendant who testifies at trial.
Accordingly the cause is remanded to the District Court of Appeal, Fourth District, to be remanded for a new trial consistent with this opinion.
It is so ordered.
OVERTON, C.J., and ENGLAND, SUNDBERG and HATCHETT, JJ., concur.
OVERTON, C.J., concurs with an opinion with which ENGLAND, SUNDBERG and HATCHETT, JJ., concur.
ENGLAND, J., concurs with an opinion.
ADKINS, J., dissents with an opinion.
OVERTON, Chief Justice, concurring.
I concur with the majority opinion. The use of a prior inconsistent statement of the defendant to impeach his testimony, in accordance with Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), is a sensitive part of the trial. It must be approached by prosecutors with considerable caution.
The purpose of impeachment is to attack the credibility of a witness. The admission of the prior inconsistent statement must be used only for the purpose of questioning the credibility of the witness, not as evidence in chief. The procedure for the impeachment of a witness is prescribed by Section 90.10, Florida Statutes (1975), as follows:

*1025 Impeachment of witness by adverse party.  If a witness, upon cross-examination as to a former statement made by him relative to the subject matter of the cause and inconsistent with his present testimony, does not distinctly admit that he has made such statement, proof may be given that he did in fact make it; but before such proof can be given, the circumstances of the supposed statement, sufficient to designate the particular occasion, must be mentioned to witness, and he must be asked whether or not he made such statements.
Prosecutors should proffer to the trial court any impeachment examination of a defendant concerning prior inconsistent statements outside the presence of the jury. Failure to do so may contaminate the trial and require a mistrial. The standard evidentiary rules establishing the proper predicate for the impeachment of a witness are applicable. The proper predicate for impeachment requires the State to advise the defendant the substance of the prior inconsistent statement and the time and place it was made as well as the person or persons to whom made. Although this rule does not require perfect precision, the predicate for impeaching the testimony must be such that the defendant cannot be taken by surprise. Further, an opportunity must be afforded the defendant to refresh his memory, to make intelligent answers, and to offer such explanations as he may desire. Brown v. State, 46 Fla. 159, 35 So. 82 (1903); Rowe v. State, 128 Fla. 394, 174 So. 820 (1937); Bright v. State, 250 So.2d 10 (Fla.3d DCA 1971); Whitley v. State, 265 So.2d 99 (Fla.3d DCA 1972); Walter v. State, 272 So.2d 180 (Fla.3d DCA 1973); Jones v. State, 281 So.2d 398 (Fla.2d DCA 1973); see Florida Evidence Code, Section 90.614(2) (effective July 1, 1977); Berger et al., Evidence, 30 U. Miami L.Rev. 561, 594 (1976).
As required in the majority opinion, the defendant must be given an opportunity to present testimony that any statement, if made, was involuntary, and the court must make a determination of voluntariness before the statement may be used for impeachment purposes.
In the instant case not only was the voluntariness not determined, but the basic trial procedure for impeachment of witnesses was either unknown or ignored. No proper predicate for impeachment was ever established.
The cause must be remanded for a new trial.
ENGLAND, SUNDBERG and HATCHETT, JJ., concur.
ENGLAND, Justice, concurring.
In this case we are required to resolve one of the most difficult problems of policy to come before this Court during my tenure here. Very compelling arguments can be made both for the majority view and for Justice Adkins' dissenting view. It is unnecessary for me to set out the arguments in full since, as Justice Adkins notes, there is extensive discussion as to both views elsewhere. See particularly the opinions in People v. Disbrow, 16 Cal.3d 101, 127 Cal. Rptr. 360, 545 P.2d 272 (1976), a 4-3 decision opting under the state constitution to reject the federal rule of permissible impeachment announced in Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).
I have joined the majority, or Harris view, for basically two reasons. For one, this Court recently adopted that view unanimously,[1] and in this area of the criminal law particularly, where our decisions are expressly designed to guide law enforcement behavior, we have an obligation to maintain reasonable decisional stability.
Secondly, I am not fully persuaded by the reasons offered against the Harris view. I do not believe that law enforcement officials will violate Miranda with abandon if inadmissible statements are available to impeach the credibility of the defendant. These officials can never know if a particular defendant will testify, and I cannot attribute *1026 to these officials a general desire to pile up illegally obtained evidence in all cases in the hope that they can either snare a defendant at his trial or force him to waive his right to testify because of what they are holding in reserve. Nor do I believe that the judiciary will be seriously inconvenienced or prejudiced by the loss of the precision which Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), undoubtedly brought into the judicial handling of "voluntary" v. "coerced" determinations. The imprecision which Harris has introduced is confined to the impeachment of inconsistent testimony  a relatively limited area.
I am more troubled by the last argument against Harris  that juries cannot intellectually separate the use of a prior inconsistent statement into mental compartments which differentiate between the impeachment of a defendant's credibility and the substance of the statement itself. In fact, I am reasonably certain that jurors cannot exercise that mental gymnastic in most cases. But, I am led to conclude, as Justice Richardson stated in Disbrow,[2] that we indulge any number of similarly indefensible assumptions in defense of the sanctity of our jury system. So, until a better system comes along, our system of jurisprudence is best served by recognizing the difficulties with our logic and resolving them as best we can (in these impeachment situations we require a limiting jury instruction[3]), rather than scrapping the entire system.
More significantly, I am persuaded to the Harris view by the rationale which supports its adoption, namely that the goal of Harris, which happens to be the polestar of all judicial proceedings, is a search for the truth. I cannot accept the view that any inconvenience or difficulty in the process can outweigh the need to ascertain the truth, and especially is this the case when the problem of impeachment is triggered in the first instance by a criminal defendant's willingness, under oath in his own defense, to offer statements inconsistent with pronouncements made at an earlier date. The anti-Harris view tolerates these inconsistencies, from their mildest forms of honest mis-recollection to their extreme forms of plain perjury, not because either inconsistent statement is necessarily untrue but as a price to be paid by society for police overreaching. That accommodation is simply beyond my level of tolerance.
ADKINS, Justice, dissenting.
It is time that we reaffirm the independent nature of the Florida Constitution and assume our responsibility to define and protect the rights of Florida citizens, despite conflict in decisions of the United States Supreme Court interpreting the Federal Constitution. Reasonable men can and do differ about the balance to be struck between "liberty" and "order." Swinging to the "order" side in this case will not only infringe upon the "liberty" of our citizens, but create a chaotic trial problem.
Prior to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), state courts were barred by the Fifth and Fourteenth Amendments from admitting into evidence confessions that were "involuntary." Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936). The courts held that a confession must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). This test spawned multiple categories identifying impermissible interrogatory practices.
*1027 The principal objective of Miranda, supra, was to establish safeguards that would liberate courts, insofar as possible, from the difficult and troublesome necessity of adjudicating in each case whether coercive influences had been employed to secure admissions or confessions. Miranda, supra, established broad procedural guidelines as well as a precise manual for conducting custodial interrogations. It created a single, uncomplicated, universally applicable test for determining whether a particular confession was coerced. If proper warnings are given voluntariness is assured, at least in the absence of evidence of coercion. Conversely, if an accused is inadequately informed of his rights involuntariness is assumed, and the statements are inadmissible at trial.
In Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), the Supreme Court held that statements which were inadmissible as affirmative evidence because of a failure to comply with Miranda, supra, could nevertheless be used for impeachment purposes to attack the credibility of a defendant's trial testimony, as long as the statements were not "coerced," or "involuntary." Language to the contrary in Miranda, supra, was dismissed as dictum.
The Harris rule resurrects the remains of the earlier voluntariness test. Under this rule the following may be anticipated: A defendant will testify in a manner the prosecution considers contrary to his extra-judicial statement. The defendant will contend that the statement is involuntary under one of the pre-Miranda definitions of that term. The proceedings will then be interrupted, not only at mid-trial but at mid-examination, for an evidentiary hearing. The outcome of this hearing will be subject to later review on appeal. Only if the statement is ruled voluntary will it be admissible to impeach. There will then arise an impressive body of law on the involuntariness issue, as the various appellate courts grapple with the problem on a case by case basis.
Although the statement or confession is admissible for the purpose of impeachment, the jury in all probability will review prior inculpatory statements as substantive evidence of guilt rather than as merely reflecting on the defendant's veracity. The use of a limiting instruction by the court does not solve this problem, for we cannot expect a juror to undergo the mental gymnastics required to treat a confession as mere impeachment instead of an absolute admission of guilt.
A defendant, faced with the prospect of the jury hearing his illegally obtained confession if he testifies in his own behalf, will be under considerable pressure to forego this most basic right of an accused.
Also, to permit admissibility leaves little or no incentive for police to comply with Miranda's requirements. Law enforcement has made great strides in up-grading investigations. Officers are more intelligent and are better trained. No longer do they rely upon mere evidence of commission of a crime coupled with a confession by the defendant in order to secure a conviction. There is a likelihood that police misconduct may be encouraged by the Harris rule, and some of the ill-trained officers will revert to former procedures.
I am motivated to agree with Harris because of my abhorrence of the possibility of perjured testimony, although as a former trial judge, I recognize that defendants in criminal actions are prone to commit a "little" perjury when their life or liberty is at stake. I do not condone such conduct. On the other hand, I could not conceive that evidence obtained in flagrant violation of Miranda should ever be presented to a trier of fact. Miranda articulates a simple, workable rule which is still the law of this land. This rule can be abrogated by police officers when they ignore their duty to give the simple warnings prescribed in Miranda, knowing full well that the illegally obtained statements may be admissible for impeachment purposes if a defendant elects to testify. The rights of our citizens under our State constitution should not be impaired when police officers ignore a duty imposed upon them by the United States Supreme Court and this Court.
*1028 Other courts have rejected Harris on state constitutional grounds. People v. Disbrow, 16 Cal.3d 101, 127 Cal. Rptr. 360, 545 P.2d 272 (1976); State v. Santiago, 53 Haw. 254, 492 P.2d 657 (1971).
Academic reaction to Harris has in general been strongly critical. See, e.g., Dershowitz & Ely, Harris v. New York: Some Anxious Observations (1971) 80 Yale L.J. 1198; Note, Harris v. New York: The Retreat from Miranda (1972) 32 La.L.Rev. 650; Note (1971) 40 Fordham L.Rev. 394; Note (1972) 85 Harv.L.Rev. 44; Note (1971) 24 Vand.L.Rev. 843; Note (1971) 39 Geo.Wash. L.Rev. 1241: Note (1973) 73 Colum.L.Rev. 1476).
Just as in Tsavaris v. Scruggs (opin. filed March 17, 1977), we are receding from a time-honored principle of law enunciated by this Court in Crawford v. State, 70 Fla. 323, 70 So. 374 (1915). See also Annotation, 89 A.L.R.2d 478. We should assert an independence in construing the State constitution so as to maintain stability in the law and protect individual rights.
To convict a person on the basis of statements procured in violation of his constitutional rights is intolerable. Our system of government at all times protects the accused's privilege freely to choose whether or not to incriminate himself.
We are called upon to referee the bout between "order" and "liberty." Even though the clout of public opinion strengthens the corner of "order," the judiciary is charged with the unpopular responsibility of safeguarding the weakened underdog, the "liberty" of each citizen, however serious the criminal charge against him may be. We cannot "help stop crime" by trampling upon the rights of any individual defendant. Over-zealous officers and over-zealous courts could seriously impair, if not destroy, the basic rights of our people, while other branches of government bodaciously proclaim our interest in nurturing these human rights throughout the rest of the world.
Under the Constitution of the State of Florida, the State should not be allowed to impeach a defendant with statements made by him to officers who have failed to give him the warnings required by this Court.
NOTES
[1] 320 So.2d 468 (Fla. 4th DCA 1975).
[2] Cone v. State, 285 So.2d 12 (Fla. 1973).
[3] The conflict gives us jurisdiction. Art. V, § 3(b)(3), Fla. Const.
[1] State v. Retherford, 270 So.2d 363 (Fla. 1972).
[2] 16 Cal.3d 124-26, 127 Cal. Rptr. 375-76, 545 P.2d 287-88 (dissent).
[3] Were it feasible I would change the process by which voluntariness is determined, at least to a limited extent. Conceding there exists the possibility of impeachment whenever a criminal defendant elects to testify on his or her own behalf, where the state knows of an inadmissible statement it has obtained I would hold the voluntariness hearing, out of the jury's presence, before the defendant first takes the stand in order to get that determination out of the way. This would minimize disruption of the trial during his testimony if the matter of impeachment ever comes up. I understand the danger of adopting this procedure in all cases.