449 So.2d 845 (1984)
Lester ENRIQUEZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 81-1554.
District Court of Appeal of Florida, Third District.
March 20, 1984.
Rehearing Denied May 31, 1984.
*846 Bierman, Sonnett, Beiley, Shohat & Sale and Benedict P. Kuehne, Edward R. Shohat, Miami, for appellant.
Jim Smith, Atty. Gen. and Carolyn M. Snurkowski, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and BARKDULL and JORGENSON, JJ.
BARKDULL, Judge.
The appellant, a 15 year old truant, after an argument with his father, took a rifle and a handgun belonging to his father and departed for Key West with a friend. The automobile caught on fire on the Florida Turnpike Extension. A passing motorist put out the fire but the automobile was disabled. At this point the appellant removed the handgun from the passenger compartment of the vehicle and put it in the trunk with the rifle. Shortly thereafter a state highway patrol trooper arrived on the scene to give assistance and called for a wrecker. While waiting for the wrecker the trooper conducted an investigation of the matter ascertaining the appellant was driving with a restricted license. The wrecker arrived and the driver waited while the trooper finished his investigation. While he was waiting, the appellant told his friend that he was going to hold the gun on the tow truck driver's head until they got to Key West. Shortly thereafter the appellant retrieved the handgun from the trunk of his car and without any provocation or warning, shot and killed the trooper and the driver of the wrecker. He and his friend then took the wrecker and fled the scene. They were apprehended shortly thereafter by law enforcement officers in response to a BOLO. When apprehended, *847 the appellant, upon alighting from the wrecker, told the officers that his friend didn't do anything. They were apprehended at 8:53 P.M. The appellant was picked up by a trooper who took him to a public safety department substation. Upon arrival at the substation the trooper gave the appellant his Miranda warning at which time the appellant responded he might need a lawyer but to please not call his father. The trooper turned the appellant over to a Detective McHugh at the substation. There was no showing that when he did so that he conveyed to Detective McHugh the appellant's request for counsel. Detective McHugh told the appellant his father had been notified and he transported the appellant to the Public Safety Department headquarters in Miami. Enroute the appellant wanted to talk about the incident but was told to wait until he had talked to his father. The appellant's father arrived at the main station about 12:50 A.M. where he met Detective McHugh and was allowed to talk to the appellant. Thereupon, both the appellant and his father were painstakingly explained the appellant's rights under Miranda and they both waived those rights in writing. Detective McHugh then conducted an interview of the appellant. The appellant gave an oral statement about 6:30 A.M. This statement was transcribed, reviewed and corrected by him and executed about 8:30 A.M. Immediately after signing the statement the appellant and his father were introduced to a doctor by Detective McHugh. The doctor informed both, that he had been asked by the state attorney to examine the appellant to see if he had any mental problems. They were informed that neither had to talk to him. Both the appellant and his father gave permission for the interview which followed. After being interviewed by the doctor, the appellant was transported to Youth Hall. Complaining of injuries received at the time of his arrest, he was taken to the hospital by a Youth Hall counselor. While at the hospital the appellant told an unknown inmate that he had killed a trooper. This statement was overheard by the Youth Hall counselor.
The appellant was subsequently indicted as an adult. Prior to trial he moved to suppress his oral and written statements alleging the statements were not voluntarily given. At no time during the hearing on the motion did the appellant allege that the statements were taken in violation of his right to counsel under Miranda. In fact, the request for counsel did not even come to light until redirect examination of the appellant at trial on his defense in chief. The trial court denied the motion to suppress as to the aforementioned spontaneous remarks and the statements to Detective McHugh and Doctor Mutter. He granted the motion to suppress as to the statements made to the initial transporting trooper. The cause was tried by a jury which convicted the appellant of second degree murder of the trooper, first degree felony murder of the wrecker driver, and robbery. He was sentenced to life imprisonment on each count, to run consecutively.
On appeal he urges 6 points as error and grounds for reversal. They are as follows:
I. The trial court was obligated to exclude the defendant's custodial statements where they were not freely and voluntarily obtained with full knowledge of his constitutional rights. II. The examination of the defendant by the state psychiatrist violated the defendant's constitutional rights to counsel and to remain silent. III. The evidence was insufficient to prove that the defendant had committed first degree murder. IV. The trial court erred in instructing the jury concerning an essential element of the crimes charged. V. The defendant was improperly convicted and sentenced for the alleged robbery where such offense was the only basis for the murder conviction. VI. The interests of justice require a remand to the lower tribunal due to the absence of a transcript of the post-verdict hearing.
We shall discuss the points in order. As to point one, the appellant alleges there was an unreasonable delay in taking *848 the defendant into juvenile custody; the statements and confession were involuntary and not freely made; and his constitutional right to counsel pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)[1] was denied him. The first and second contentions were presented to the trial court and decided adversely to the defendant. The record contains substantial competent evidence to sustain those findings. See Harris v. State, 438 So.2d 787 (Fla. 1983). We also find the claim of denial of his right to counsel to be without merit for any or all of the following reasons. First, a review of the record on appeal reveals that this issue was never asserted in the trial court at either the hearing on the motion to suppress or at trial and was never ruled upon by the trial court; therefore, we are not at liberty to review the question at this time. See Morgan v. State, 177 So.2d 60 (Fla. 3d DCA 1965); Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Second, even if we were to review the question, the record on appeal shows on its face that the defendant effectively waived his right to counsel and the confession would have been admissible under the holdings in Waterhouse v. State, 429 So.2d 301 (Fla. 1983) and Cannady v. State, 427 So.2d 723 (Fla. 1983). Finally, even if the statements would have been otherwise inadmissible, the record reflects that the confession of the defendant was admitted in the state's case on rebuttal for impeachment purposes and as such would have been admissible under the holdings in Nowlin v. State, 346 So.2d 1020 (Fla. 1977) and Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).
The defendant's second point going to admissibility of testimony by the state's psychiatrist is also without merit. It is the defendant's position that the psychiatrist examined him without informing him of his Miranda rights and without an attorney being present and therefore his testimony is inadmissible. However, the defendant chooses to overlook the fact that prior to initiation of interrogation, his rights had been fully explained to him by Detective McHugh and he effectively and knowingly waived his rights under Miranda v. Arizona, supra and Edwards v. Arizona, supra. See Waterhouse v. State, supra; Cannady v. State, supra. Thereafter, the interrogation session commenced and continued without break up to and including examination by the state's psychiatrist, to which the defendant consented. Miranda v. Arizona, supra, merely requires that the defendant be apprised of his rights and that there must be a valid waiver of those rights before an interrogation can take place. Nowhere is there a requirement that after effective waiver, each individual questioning the defendant during a single continuing session of interrogation must, prior to asking any questions, readvise the defendant of his Miranda rights. We will not impose such a restriction on the questioning of a suspect. To do so overlooks the fact that suspects are many times questioned by more than one person in a single session and the suspect has the right to stop such an examination at any time should he object to being questioned by someone other than the person who originated the questioning and informed him of his rights under Miranda v. Arizona, supra. Therefore, we find the testimony of the psychiatrist was properly admitted into evidence.
The defendant's third point challenges the sufficiency of the evidence to support the felony murder conviction in that the taking of the tow truck occurred after the shooting of its operator. The record on appeal shows that the defendant had, in fact, formulated the intent to take the tow truck in order to continue to his destination, prior to any shooting taking place. The defendant's friend, who was accompanying him on the trip, testified that when he asked the defendant how he *849 was going to pay for the tow of his disabled vehicle, the defendant said, "... he was going to hold the gun on the tow truck driver's head until we got to Key West". This statement clearly evidences an intent to take the tow truck made prior to the shooting. See Gafford v. State, 387 So.2d 333 (Fla. 1980).
The fourth point alleging error in failing to instruct the jury concerning an essential element of the underlying felony, more specifically that the intent to permanently deprive a victim of his property is necessary to prove the crime of robbery, is equally without merit. No objection was made to the jury charge. Under the facts of this case, wherein the defendant admitted taking the truck, failure to charge on intent would not constitute fundamental error so flagrant as to require reversal. Such error would at most constitute harmless error. See Stewart v. State, 420 So.2d 862 (Fla. 1982); Williams v. State, 400 So.2d 542 (Fla. 3d DCA 1981).
The fifth point relating to error in the convicting and sentencing on the underlying felony, to wit: robbery, is well taken. On the authority of Bell v. State, 437 So.2d 1057 (Fla. 1983) and Boivin v. State, 436 So.2d 1074 (Fla. 3d DCA 1983), we vacate the conviction and sentence for robbery. But see, Hawkins v. State, 436 So.2d 44 (Fla. 1983).
The defendant's final point requests this court remand the cause to the trial court due to the absence of a transcript of a post trial hearing. It is his intention to attempt to reconstruct the record concerning the post verdict hearing in hopes of finding some error to substantiate a reversal of this cause. This we decline to do. Florida Rule of Appellate Procedure 9.200(b)(3) sets forth the procedure for reconstructing a transcript. That procedure was not utilized herein and there has been no showing that the transcript could not have been reconstructed in that manner. The language of the verdict filed herein is not so ambiguous as to render its meaning doubtful. The trial court conclusion as to the verdict's meaning has not been shown to be erroneous herein and it will be affirmed. See Knowles v. State, 86 Fla. 270, 97 So. 716 (1923).
The record in this case demonstrates that all the law enforcement personnel involved did everything they could to protect the rights of the appellant (who had killed a fellow officer and a stranger without provocation and in cold blood). The evidence of guilt was overwhelming. He received a fair trial and save and except for the sentence on the felony, which formed the basis for the felony murder conviction, he has no complaint on this record.
We hereby vacate the conviction and sentence for robbery and otherwise affirm the judgment except that we modify the judgments to make the minimum mandatory sentences run concurrently, Palmer v. State, 438 So.2d 1 (Fla. 1983), rather than consecutively.
Affirmed as modified.
SCHWARTZ, Chief Judge (dissenting).
Although I wish that I could conclude otherwise, I believe that Enriquez is entitled to a new trial on the grounds that (a) his confession was erroneously admitted because it was given after he had requested but had not been furnished a lawyer; Wyrick v. Fields, 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982); Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); and (b) the state-hired psychiatrist was improperly permitted to testify contrary to the plainly controlling authority of Estelle v. Smith, 457 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). Both the confession and Dr. Mutter's testimony were admitted as substantive evidence on rebuttal, see State v. Burwick, 442 So.2d 944 (Fla. 1983) rather than impeachment as perhaps authorized under Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) and Nowlin v. State, 346 So.2d 1020 (Fla. 1977). Finally, I am unable to agree with the court either that Enriquez effectively waived the rights involved or that these contentions were not properly preserved for review.
*850 I concur with the court's disposition of the remaining points presented.
JORGENSON, Judge, specially concurring.
I write, principally, to point out that, in his dissent, Chief Judge Schwartz's citation to Wyrick v. Fields, 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982), and Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), is inapposite to the conclusion he reaches when considered in relation to the record before us.
In Edwards the Court wrote,
[W]e now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights [footnote omitted]. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police,

id. at 485-86, 101 S.Ct. at 1884-85, 68 L.Ed.2d at 386 (emphasis added). Or, as stated in Wyrick, "once a suspect invokes his right to counsel, he may not be subjected to further interrogation until counsel is provided unless the suspect himself initiates dialogue with the authorities," id. at 45, 103 S.Ct. at 395, 74 L.Ed.2d at 217 (emphasis added).
The trial transcription of the direct examination of Officer McHugh by the prosecution includes the following:
Q. En route from [the substation] to [Public Safety Department Headquarters], did Lester Enriquez say anything to you about his desire, if any, to talk to you?
A. Yes, he did.
Q. What did he tell you?
A. On several occasions he told me that he wanted to tell me what happened. However, I advised him at that time not to say anything until we arrived at my office and his parents were present.
The record further reveals that this issue was not raised during the cross-examination of Officer McHugh. If Enriquez ever exercised his right to counsel, he subsequently waived it after initiating dialogue with the authorities.
Additionally, although Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), indeed requires that a suspect be informed of his Miranda rights before examination by a state-appointed psychiatrist, in Estelle the suppression of the examination occurred because the examination was an isolated event in the prosecutorial proceedings, and therefore necessitated that the suspect be informed of his Miranda rights. As Judge Barkdull makes clear in the majority opinion, Enriquez was examined by the state-appointed psychiatrist subsequent to having been informed of, and having waived, his Miranda rights earlier in the interrogation, which was a continuous, unbroken process involving both Officer McHugh and Dr. Mutter. There was, therefore, no need to reinform Enriquez of his Miranda rights.
NOTES
[1] Edwards v. Arizona, supra, has been held not to be retroactive in the case of Solem v. Stumes, ___ U.S. ___, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984). The instant offense occurred in 1978.