528 So.2d 1266 (1988)
Leroy G. AZAR, Appellant,
v.
RICHARDSON GREENSHIELDS SECURITIES, INC., Appellee.
No. 87-2522.
District Court of Appeal of Florida, Second District.
July 22, 1988.
*1267 Thomas G. Long of Barnett, Bolt & Kirkwood, Tampa, for appellant.
Frederick W. Sall of Morgan, Lewis & Bockius, Miami, for appellee.
PARKER, Judge.
Azar appeals from an order granting a motion for directed verdict against him, following a jury trial, in favor of Richardson Greenshields Securities, Inc. (Richardson). We reverse in part and affirm in part.
Azar's amended complaint contained four counts. In count I, Azar sought compensatory damages against Richardson for violations of the Florida Securities Act, specifically section 517.301, Florida Statutes (1985) alleging that misrepresentations made to Azar in January 1984 by Charles Gill (Gill), the manager of Richardson's Fort Myers office induced Azar to purchase stock in C.P. Rehab Corporation (C.P. Rehab) which resulted in a loss. Azar, in *1268 count II, sought compensatory and punitive damages against Richardson under a theory of common law fraud and misrepresentation. Azar had voluntarily dismissed count III prior to trial. In count IV, Azar sought compensatory damages resulting from Richardson's breach of contract to manage Azar's margin account in a timely and professional manner.
Azar approached Richardson in early 1984 after Azar's accountant recommended Richardson and Gill to Azar. Azar, in January 1984, met with Gill, and Gill informed Azar that he would personally handle Azar's account. Gill apprised Azar of the many services available through Richardson which included publication of recommendational reports of worthy investments. Gill also explained to Azar that Richardson's research department was unique in that it not only analyzed financial data available to the public but also sent representatives to conduct onsite investigations of selected companies. Gill recommended that Azar purchase stock in C.P. Rehab, a company involved in specialized heart-related medical services. Gill advised Azar that C.P. Rehab received a direct federal subsidy of thirty percent and that this subsidy would be increased to sixty or seventy percent in the near future. Gill related that Richardson's research department had recently obtained knowledge of the increased subsidy and had published a recommendational report on C.P. Rehab. Gill stated that the recommendational report indicated that the increased subsidy would have a dramatic, positive effect on the price of the stock. At the conclusion of the meeting, Azar purchased 6,000 shares of C.P. Rehab stock for a total price of $88,736.
Azar testified that when determining whether to buy a particular stock he relied almost exclusively on his brokers and the research reports of the brokerage firm. Azar presented the testimony of a former Richardson stockbroker who testified that Azar's reliance on his brokers and the firm's research reports when buying stocks is a standard practice in the industry and is encouraged by brokerage firms. Richardson's own expert testified that a brokerage firm's research reports are material to an investment decision and reliance upon such reports is standard practice.
Three stockbrokers who worked in Richardson's Fort Myers office during the relevant time period testified that Gill instructed them to sell C.P. Rehab stock aggressively because C.P. Rehab was the subject of a Richardson's recommendational research report that set forth the increased, direct federal subsidy for C.P. Rehab. Two of these stockbrokers did not believe Gill because of Gill's reputation for dishonesty among the brokers, and they did not attempt to sell C.P. Rehab stock.
In May 1984, Gill was either terminated or voluntarily resigned from Richardson. Soon thereafter, it became clear to Azar that Richardson had never followed C.P. Rehab stock, that C.P. Rehab was not federally subsidized, and that Gill's representations concerning the stock were false. Azar's independent investigation of C.P. Rehab revealed that it was never subsidized by the federal government. Further, a corporate representative of Richardson testified that Richardson never published a recommendational report on C.P. Rehab stock and that Richardson's research department had never followed C.P. Rehab. Within two days of Azar's discovery of Gill's misrepresentations, Azar sold all of his 6,000 shares of C.P. Rehab stock at a loss of $42,500.
Richardson attempted to cover up the improprieties of Gill concerning C.P. Rehab stock. Richardson rescinded a sale of C.P. Rehab stock made by Gill to a Dr. Howard Frankel because of improprieties in connection with the sale. Richardson, however, did not list Frankel in answers to interrogatories as purchasing C.P. Rehab stock through Gill and denied making any payment to Frankel to reimburse Frankel for the purchase of C.P. Rehab stock. Frankel testified that Gill pressured him into buying C.P. Rehab stock and that Richardson *1269 finally rescinded the purchase in response to Frankel's complaints.
Richardson's expert testified that C.P. Rehab was a good speculative stock and that investor information was publicly available. The expert testified that he considered that the federal government did subsidize C.P. Rehab through Medicare payments, but admitted that a report available to Richardson cautioned C.P. Rehab investors of future reductions in these Medicare payments.
Azar had also transferred a margin account to Richardson. Azar testified that Gill had informed him that Azar could trade on margin with Richardson and that Richardson would make margin calls within twenty-four hours of need for additional margin. On November 21, 1987, Azar received a margin call for $36,000. Azar instructed Richardson to sell securities in Azar's portfolio to cover the margin call. Azar testified that he suffered damages in the amount of $17,000 when he liquidated his stock due to the decrease in value of the stocks in his portfolio over the two months in which Richardson failed to make the margin call.
Addressing Azar's complaint in reverse order, we affirm the trial court's ruling as to count IV of the amended complaint. Although Azar alleges there was an agreement between himself and Gill that Richardson would make margin calls within twenty-four hours of need for additional margin, we find that Azar and Richardson signed a standard customer trading agreement which did not include a provision regarding this subject. Representations, negotiations, and conversations which precede or are contemporaneous with the making of a contract are presumed to have merged in the written agreement. Windowmaster Corp. v. Jefferson Constr. Co., 114 So.2d 626 (Fla. 3d DCA 1959).
We, however, reverse the trial court's entry of a directed verdict as to counts I and II of the amended complaint. A motion for directed verdict admits the truth of all facts in evidence and every reasonable conclusion or inference based thereon which is favorable to the non-moving party. Hartnett v. Fowler, 94 So.2d 724 (Fla. 1957). The motion must be denied if the evidence is conflicting or different conclusions or inferences can be drawn from it. Maximo Moorings Marine Center, Inc. v. Walke, 196 So.2d 215 (Fla. 2d DCA 1967). Further, the trial court may not pass upon the credibility of witnesses or weigh the evidence in ruling on the motion. Maas Bros., Inc. v. Bishop, 204 So.2d 16 (Fla. 2d DCA 1967).
Section 517.301, Florida Statutes (1985) prohibits a person from, directly or indirectly, (1) employing any device, scheme, or artifice to defraud; (2) obtaining money or property by means of any untrue statement of a material fact; or (3) engaging in any transaction, practice, or course of business which operates as a fraud or deceit upon a person. Based upon the evidence presented, the trial court erred in failing to submit the matter to the jury for the ultimate decision as to Richardson's liability under count I of the amended complaint. See Finocchi v. Nies, 452 So.2d 88 (Fla. 2d DCA 1984).
In order for Richardson to be liable under count II for common law fraud or misrepresentation, Azar was required to prove that Richardson knowingly made a misrepresentation concerning a material fact that was intended to induce Azar to act and that Azar justifiably relied and acted upon the misrepresentation and suffered resulting damage. See Perry v. Cosgrove, 464 So.2d 664 (Fla. 2d DCA 1985). A material fact relates to a matter of importance or significance to a reasonable investor. Gilbert v. Nixon, 429 F.2d 348, 355-56 (10th Cir.1970). The trial court erred in failing to permit the jury to decide the issues of fact alleged in count II of the amended complaint. Azar's testimony established that he relied on Gill's representation that Richardson published a report *1270 which recommended C.P. Rehab stock because the company was being directly subsidized by the federal government and the subsidy was being increased. Evidence adduced at trial demonstrated that these statements were false and that Azar suffered resulting damages. Based upon the evidence presented, the trial court erred in directing the verdict as to count II. It was also error for the trial court to direct a verdict on Azar's claim for punitive damages in count II. Proof of fraud that is sufficient to support a claim for compensatory damages is necessarily sufficient to create a jury question regarding punitive damages. First Interstate Development Corp. v. Ablanedo, 511 So.2d 536 (Fla. 1987).
Because we are reversing and remanding this case for further proceedings, we note that the trial court improperly excluded certain statements made to Azar by Richardson's interim manager, successor manager, and stockbroker. We hold that these statements were admissible because they were all statements of Richardson employees concerning matters within the course and scope of their employment with Richardson during the existence of their employment and are exceptions to the hearsay rule. See § 90.803(18)(d), Fla. Stat. (1985); Hunt v. Seaboard Coast Line R.R. Co., 327 So.2d 193 (Fla. 1976); Botte v. Pomeroy, 497 So.2d 1275 (Fla. 4th DCA 1986), petition for review denied, 508 So.2d 15 (Fla. 1987).
Affirmed in part; reversed in part; and remanded for proceedings consistent with this opinion.
CAMPBELL, C.J., and RYDER, J., concur.