**Karen Lange OLSEN, Plaintiff,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant.**

No. 90–382–CIV–T–17(B).

United States District Court,
M.D. Florida,
Tampa Division.

March 12, 1991.

Lorna Susan Sills, Tampa, Fla., for plaintiff.

John Pope McAdams, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, Fla., for defendant.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

The cause is before the Court on Defendant's motion for summary judgment on breach of contract claim, filed December 27, 1990, and response thereto, filed February 1, 1991.

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. The Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant,* 595 F.2d 994, 996–7 (5th Cir.1979), quoting *Gross v. Southern Railroad Co.,* 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

> In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.,* 477 U.S. at

322–23, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

The Court also said, "Rule 56(e) therefore requires that nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex Corp.,* 477 U.S. at p. 324, 106 S.Ct. at p. 2553, 91 L.Ed.2d at p. 274.

This cause of action was removed to federal court on April 2, 1990, based on diversity of citizenship. The complaint filed in state court asserted claims for breach of contract and defamation.

## FINDINGS OF FACT

Defendant moves for summary judgment on the breach of contract claim. The following facts are relevant to the disposition of the pending motion:

1. Plaintiff was offered employment with Defendant as an insurance agent. On or about May 20, 1986, the parties entered into an employment contract, entitled Agent Employment Agreement, also known as the R1500 agreement. (Ex. B to motion and A to response). Paragraph 11 of that agreement states:

> Your employment and this Agreement will automatically terminate upon your death, retirement, loss or relinquishment of your insurance agent license, or failure to return to work upon expiration of a leave of absence. In addition, your employment and this Agreement *may be terminated at will by either party, subject only to such limitations and restrictions as may be imposed by law, and in accordance with Company rules and procedures.* Termination shall be effective upon giving notice of termination orally or in writing, delivered personally or mailed to the last known address of the other ... (emphasis supplied)

In addition paragraph 14(c) of the R1500 agreement is relevant to the issues here. That paragraph states:

> You and the Company acknowledge that each has read the Employment Agreement and the Addendum, understands it

and agrees to be bound by its terms, that it is the complete and exclusive statement of the agreement between you and the Company, and that it supersedes all proposals, oral or written, and all other communication between you and the Company relating to the subject matter of this Agreement.

2. Plaintiff states that she was told during the hiring process that the Allstate Manual (Agent's Employment Procedure Manual for R1500 Agreement) was part of the contract. (Depo. Olsen–33–35). Further Plaintiff's memorandum argues that the R1500 agreement incorporates the R1500 manual, company rules, regulations, and procedures. (response 2–3) The R1500 manual contains the following relevant parts:

EMPLOYEE DISCIPLINE PROCEDURE: The Company will not terminate the agent's employment because of unsatisfactory work unless the agent has been notified that his/her work is unsatisfactory and that his/her job is in jeopardy and unless he/she has been given a reasonable opportunity to bring his or her performance up to satisfactory standards. The term "unsatisfactory work" relates to the quality of performance. Notification that the agent's job is in jeopardy is not required in the event of termination of employment for an indictment of a criminal act or an act of dishonesty, such as, by way of example but not limited to, the following: embezzlement, falsification of any Company or industry plan documents completed or approved by the agent in the performance of the agent's duties, fraud or misrepresentation of material fact or forgery. Such notification is also not required in the event of termination of employment resulting from the violation of a provision in the R1500 Agent Employment Agreement.

TERMINATION: In the R1500 Agent Employment Agreement, the Company and the agent have each reserved the right to terminate the agent's employment and R1500 agreement at will. The rules and procedures contained in the *Human Resources Policy Statements*

*Manual,* Chapter 10, will apply to termination situations.

3. Plaintiff asserts that the Human Resources Policy Statements Manual (HRS manual) was not disclosed to agents but was held solely by Allstate managers. (Depo. Matson, response 5–6). The HRS manual states the following:

POLICY: Employment at Allstate is for an indefinite period and terminable at the will of either Allstate or an employee with or without notice and with or without cause at any time, subject only to such limitations as may be imposed by law.

References in this Manual to reasons for termination are illustrative only and are not intended to limit in any way either the reasons for which an employee may be terminated or Allstate's authority to terminate employment at will

In all circumstances, Allstate reserves the right to:

—determine whether an employee will be terminated;

—depart from its standard disciplinary procedures when, in its discretion, such a departure is deemed warranted;

—enter into an agreement with an employee terminating employment under any terms and conditions upon which Allstate and the employee may agree. Any such agreement will ordinarily, but need not, be in writing.

UNACCEPTABLE PERFORMANCE/BEHAVIOR: Employment will not be terminated for unacceptable job performance/behavior, unless an employee has been advised that his/her performance/behavior is unacceptable and his/her job is in jeopardy. Following are some examples of unacceptable performance/behavior:

—Excessive absences or tardiness

—Unacceptable performance as it relates to either quantity or quality of work assigned

—Failure to follow instructions directly related to the performance of the job. Refer to the "Progressive Discipline Procedure" for further information as to the

necessary steps to be taken prior to termination.

Note: Termination for unacceptable performance/behavior is the only type of termination requiring a "Job in Jeopardy" review.

4. Plaintiff's training period following employment lasted until July, 1986. Initially, she was assigned to a booth in the Sears at University Square Mall in Tampa, Florida. Later, in about April 1988, she was assigned to an office as an Neighborhood Office Agent. (Depo. Olsen–55).

5. On September 6, 1989, Plaintiff was discharged by Defendant. Defendant states that the basis for the discharge was that the company "believed she left Company insurance applications and documents containing Company trade secrets with an unlicensed solicitor named Michael Clark, who was not employed by Allstate."

6. Plaintiff admits she left blank Allstate insurance applications at Marine Centers for Mr. Clark who had agreed to refer business to her for a fee. (Depo. Olsen–80, 86). At the same time, she left Clark a camera and a list of rates for outboard motors and may have given him Allstate's Modern Marketing Guides (MMGs). (Depo. Olsen–87). Olsen did get between ten (10) and twenty-five (25) applications which Clark had filled out in part. (Depo. Olsen–97).

7. Plaintiff asserts that she asked her supervisor, Jesse Hill, whether or not it would be permissible to leave applications with Mr. Clark and that he told her it was no problem. (Depo. Olsen–85). For purposes of this motion, this Court takes this representation as true even though it is disputed by Mr. Hill. The Court notes that Plaintiff's position is supported by the affidavit of Yvonne Bass indicating she heard Mr. Hill tell Plaintiff that it would not be a problem to leave the applications with Clark. (Ex. G to motion).

8. At some point in time, Mr. Hill requested that Plaintiff draft a letter concerning the situation. The letter appears at Exhibit E to the motion and is dated May 17, 1989. The letter stated in relevant part:

In February, after discussing the situation with you, I told Mr. Clark that he could not be a solicitor with Allstate as long as he was employed elsewhere. I then made arrangements with him to refer business to me in return for a referral fee. Mr. Clark provides me with names, phone numbers and boat information. I then call each customer myself to sell and explain our boat policy coverage.

At the end of February I had to make an unexpected emergency trip to Maryland, for personal reasons. In an attempt to lessen the burden of my absence on my NOA associate and our secretary, I gave Mr. Clark applications so that he could gather the information that we need to write and quote a policy. He did not then, nor does he now, bind or "write" any coverage. He then called my associate who bound the coverage in my absence as is routine in our office.

... I now realize that I should have never left these applications and it won't happen again. However, they were not being used to bind business. I also reaffirmed with Mr. Clark that he understood that he could not represent himself as an Allstate agent. He assured me that he had not been doing that.

9. On or about July 27, 1989, Plaintiff was interviewed by Amy Sears, Allstate Corporate Security Representative. Plaintiff told Ms. Sears that Mr. Hill was unaware of her leaving applications with Mr. Clark. (Ex. F to motion, Depo. Olsen–136).

10. Following the investigation, the security department issued a report finding that there was evidence to support Plaintiff's discharge for breach of contract and violation of a company policy. (Ex. F to motion). On September 5, 1989, in a meeting with Terry Brady, manager; Larry Matson, human resources manager; and Jesse Hill, her supervisor, Plaintiff was told she was being discharged for "violating Company policy, and for compromising Company trade secrets by leaving rate information with Michael Clark." (motion–8). In conversation with Mr. Matson on September 6, 1989, her discharge was up-

held and it was stated that it was for violating company policy.

DISCUSSION

Defendant asserts that the employment contract in this cause is terminable at the will of either party and no action for a breach of contract is supportable. Plaintiff counters that there are genuine issues of material fact relating to what compromises the employment contract and to the proper interpretation of the "contract."

■ There is a clear distinction under Florida law between employment contracts of definite or indefinite duration. If the contract provides for a definite term of employment, termination in advance of expiration of the term is only allowable for cause and a breach of contract action may exist for non-adherence to the "for cause" requirement.

■ However, where the contract is of indefinite duration, an employer may terminate the employee at will, unless prohibited by contractual language, without the employee having an action for breach of contract. *Jarvinen v. HCA Allied Clinical Lab., Inc.*, 552 So.2d 241 (Fla.4th DCA 1989); *Demarco v. Publix Super Markets, Inc.*, 360 So.2d 134 (Fla.3d DCA 1978), *aff'd*, 384 So.2d 1253 (Fla.1980).

■ The term of the contract itself, in the absence of decisive contractual language, resolves the question of whether a contract is terminable at will and a court is not free to consider other factors. *Gonzalez v. Allstate Insurance Co.*, Case No. 86–1650–CIV–Ryskamp (S.D.Fla.1987), *aff'd without opinion*, 862 F.2d 877 (11th Cir.1988). It is a question of law as to whether or not the term is one of definite or indefinite duration. It is the plaintiff's burden to prove that the contract is not one terminable at will. *Id.*, at 4.

■ The question that must first be resolved is what comprises the employment contract between Plaintiff and Allstate. Plaintiff asserts that there are controverted facts on this issue preventing summary judgment. Plaintiff asserts that the R1500 manual is "expressly mentioned and incorporated into the R1500 Agreement" and that the R1500 manual raises genuine issues as to whether or not the contract is one terminable for cause only.

Plaintiff asserts that the R1500 manual is incorporated by reference in the agreement and that it was orally represented to her that it was part of her employment contract. As to the oral incorporation, Plaintiff asserts that she was told before she signed the contract that the manual was part of her contract. Plaintiff read the contract prior to signing it and had no further conversations subsequent to signing. (Depo. Olsen–34, 35, 39).

The Agent Employment Agreement between the parties provides that employment may be terminated "at will" by either party, subject only to the limitations and restrictions as imposed by law and in accord with the company's rules and procedures. It also contains a merger clause at paragraph 14(c) which states that the Agent Employment Agreement and the Addendum, which is not relevant to this issue, comprise the "complete and exclusive" agreement between the parties. The Court cannot consider the alleged statements to Plaintiff prior to signing the employment contract to determine if the R1500 manual is incorporated in the agreement. *Azar v. Richardson Greenshields Securities, Inc.*, 528 So.2d 1266 (Fla. 2d DCA 1988).

■ Plaintiffs additionally assert that the R1500 agreement expressly incorporates the R1500 manual by reference. The Court cannot agree. The Court has reviewed the employment contract and finds as a matter or law that the R1500 manual is not incorporated by reference by the R1500 agreement. This agreement is similar to the one in *Gonzalez*, where the contract clearly stated that it was terminable at will but separately the parties agreed to certain procedures regarding termination for unsatisfactory performance. The court there stated: "This qualification on the unlimited right to terminate the agreement 'at will' does not transform the agreement into a 'terminable for cause only agreement' and by inverse reasoning transform the agreement into an agreement for

a definite duration." Here as in *Gonzalez* the allegations concerning the existence and effect of handbooks, procedure manuals, etc., are neither legally relevant nor sufficient to change the contract from one of termination at will unless the plaintiff can assert a particular provision of the contract itself which converts the term. *Gonzalez*, at page 6. The Court finds that Plaintiff has not asserted any particular provision of the contract which converts the term of the contract from the at will to the definite duration.

Since the Court has found that there is no genuine issue that the R1500 manual is incorporated in the employment agreement and that the employment of Plaintiff was terminable at will, it is not required that it go any further. However, the Court has made the assumption called for by Plaintiff, that the R1500 manual was included in the employment contract, to determine whether inclusion of that document would alter this decision. It would not. The Court agrees with Defendant on this issue and, if required to make the decision based on the inclusion of the R1500 manual in the contract, would adopt the memorandum in support of the motion, pages 15 to 18. Accordingly, it is

ORDERED that the motion for summary judgment on the contract claim be granted and Count I of the complaint be dismissed.

DONE and ORDERED.