807 So.2d 98 (2002)
Carl HUGHES, Appellant,
v.
Michael D. SLOMKA, M.D.; Steven B. Warren, M.D.; Tampa Bay Orthopaedic Specialists, P.A.; Steven G. Epstein, M.D.; and Bay Area Surgical Associates, P.A., Appellees.
No. 2D00-5264.
District Court of Appeal of Florida, Second District.
January 16, 2002.
Rehearing Denied February 19, 2002.
*99 Mark G. Morgan and Colleen Fitzgerald Nestor of Morgan, Padgett & Associates, P.A., Tampa, for Appellant.
Charles W. Hall and Troy J. Crotts of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., St. Petersburg, for Appellees Michael D. Slomka, M.D., and Tampa Bay Orthopaedic Specialists, P.A.
David C. Banker of Shook, Hardy & Bacon, L.L.P., Tampa, for Appellee Steven B. Warren, M.D.
Kenneth C. Deacon, Jr., of Deacon & Moulds, P.A., St. Petersburg, for Appellees Steven G. Epstein, M.D., and Bay Area Surgical Associates, P.A.
NORTHCUTT, Judge.
Carl Hughes sued the appellees for medical malpractice, but at trial the court granted them directed verdicts when Hughes rested his case. He challenges the propriety of those directed verdicts on appeal. We affirm without comment as to Dr. Steven Warren, Dr. Steven Epstein and Bay Area Surgical Associates. We reverse the directed verdicts in favor of Dr. Michael Slomka and Tampa Bay Orthopaedic Specialists.[1]
At the outset, we note that a motion for directed verdict admits the truth of the facts in evidence. Azar v. *100 Richardson Greenshields Sec., Inc., 528 So.2d 1266 (Fla. 2d DCA 1988). The trial court cannot judge the credibility of the witnesses or weigh evidence when ruling on such a motion. It must deny the motion if conflicting inferences can be drawn. Id. at 1269. With this standard in mind, we review the evidence Hughes presented.
Hughes's leg was amputated in April 1998, because of complications caused by vascular disease. He originally saw Slomka, an orthopedic physician, on January 5, 1998, because he believed he had injured his leg in a work-related accident. Slomka treated Hughes until March 12, 1998, but never diagnosed the vascular problem. That condition was finally discovered when Slomka referred Hughes to Dr. Warren. Hughes contends that the testimony of his expert, Dr. Norman Odyniec,[2] provided sufficient evidence that Slomka both breached the standard of care and caused his injury.
Concerning the standard of care, Hughes's complaint essentially alleged that Slomka's breach involved his failure to diagnose the vascular condition. Odyniec noted that when Hughes saw Slomka for the first time on January 5, 1998, he had symptoms that could be consistent with a vascular disorder. Odyniec testified that the proper way to discern whether a patient with Hughes's symptoms has a vascular complaint is to feel the top and side of the patient's foot for pulses. If, for example, a patient had no pulses on the first examination, or pulses were initially present but absent on a subsequent visit, this would indicate a vascular infirmity. In Slomka's deposition, which Hughes read into evidence, the doctor claimed he did check for pulses. But the absence of any mention of this in Slomka's treatment notes implied that he did not do so. See § 90.803(7), Fla Stat. (1999) (providing evidence that matter is not included in record of regularly conducted activity is admissible to prove the nonoccurrence of the matter). Thus, Odyniec opined that Slomka breached the standard of care because he did not feel for or record pulses. Although the evidence on this point was contradictory, on a motion for a directed verdict the court is not permitted to resolve conflicts in the evidence. This is the jury's duty. Maximo Moorings Marine Ctr., Inc. v. Walke, 196 So.2d 215 (Fla. 2d DCA 1967).
On the issue of causation, Odyniec testified that, more likely than not, Hughes's leg could have been saved if his vascular disorder had been diagnosed between January 1 and February 23, 1998. Yet, he also testified that from the end of January 1998, even assuming care and treatment, there was only a fifty percent chance of saving Hughes's leg. This testimony was somewhat internally inconsistent, but an inference could be drawn that Hughes more likely than not could have avoided amputation if Slomka had diagnosed the vascular problem, at least during January 1998.
Viewing this inference in a light favorable to Hughes, the nonmoving party, Hartnett v. Fowler, 94 So.2d 724 (Fla. 1957), we hold that it sufficed to withstand a motion for directed verdict on causation. The court in Gooding v. University Hospital Building, Inc., 445 So.2d 1015, 1020 (Fla.1984), held that a medical malpractice plaintiff "must show that what was done or failed to be done probably would have affected the outcome." Odyniec's opinion *101 that Hughes's leg "more likely than not" could have been saved during this period met the Gooding test. See also Lawrinson v. Bartruff, 600 So.2d 22 (Fla. 2d DCA 1992).
We reverse the directed verdicts granted to Slomka and Tampa Bay Orthopaedic Specialists and remand for a new trial.
WHATLEY and CASANUEVA, JJ., Concur.
NOTES
[1] Tampa Bay Orthopaedic Specialists, P.A., is Slomka's professional association. It was sued under the theory that it was responsible for Slomka's negligence. In the remainder of this opinion, we will refer to Slomka and Orthopaedic Specialists collectively as "Slomka."
[2] We reject Slomka's assertion that the trial court should have excluded Odyniec's testimony because he was not a "similar health care provider," as defined in section 766.102(2)(b), Florida Statutes (2000). See Meyer v. Caruso, 731 So.2d 118, 125 (Fla. 4th DCA 1999).