827 So.2d 285 (2002)
Samuel J. GOSS, D.O., et al, Appellants,
v.
Arthur PERMENTER and Jean Permenter, Appellees.
Nos. 5D01-3466, 5D01-3517.
District Court of Appeal of Florida, Fifth District.
August 23, 2002.
Rehearing Denied October 25, 2002.
*286 Rafael E. Martinez and G. Franklin Bishop, III of McEwan, Martinez & Dukes, P.A., Orlando, for Appellant Sharon Nichols, D.O.
Jennifer S. Carroll and Diane F. Medley of Law Offices of Jennifer S. Carroll, P.A., Palm Beach Gardens, for Appellant Samuel J. Goss, D.O. and Cardiovascular Associations of Lake County, P.A.
Stephen J. Knox or Morgan, Colling & Gilbert, P.A., Orlando, for Appellees.
SHARP, W., J.
In this consolidated appeal, Samuel Goss, D.O., Sharon Nichols-Sells, D.O. and Cardiovascular Associates of Lake County, P.A., appeal from final judgments rendered against them after a jury trial, which included costs, attorney fees and interest. After a close review of the transcript and record, we find no reversible error, although we agree with appellants that based on the recent case decided by the Florida Supreme Court, Amerace Corp. v. Stallings, 823 So.2d 110 (Fla. 2002), interest on the judgments must be recalculated on remand, to accrue from date of the judgment rather than the date of the verdict.
Dr. Goss's first point on appeal is that the trial court erred in not allowing defense counsel to impeach the plaintiff's expert, Dr. Gold, at trial, with testimony he gave at a pre-trial deposition.
On direct examination, Dr. Gold testified that if certain remedial steps had been taken to stop the hemorrhage Mr. Permenter was experiencing in his brain at *287 9:30 in the morning, it was "possible" he would have had no neurologic defects, or he could have been left with mild ones. On cross-examination, Dr. Gold said it was "more likely than not" that Mr. Permenter would have had no neurologic damage, or much more mild neurologic damage than he has at this point had remedial steps been taken at that point in time. Defense counsel then sought to impeach him with his deposition testimony, in which he stated had the remedial steps been taken at that time, he believed Mr. Permenter would have ended up with less neurologic damage than he subsequently suffered, and that it was "possible" he would have had no damage, or mild neurologic damage.
Although Dr. Gold uses slightly different words, i.e., "possible" and "more likely than not", and "no" defects or "no damage", and "mild" defects or "mild damage", the clear inconsistency usually required for impeachment purposes is not apparent to us. See Charles W. Ehrhardt, Florida Evidence, § 614.1 (2002 ed.); Gudinas v. State, 693 So.2d 953 (Fla.), cert. denied, 522 U.S. 936, 118 S.Ct. 345, 139 L.Ed.2d 267 (1997); Ortagus v. State, 500 So.2d 1367 (Fla. 1st DCA 1987). Appellate courts recognize the trial judge has wide discretion in making such judgments and will not find reversible error unless there is a true inconsistency in the two statements, and unless the inconsistency is relevant and material to the case. Taylor v. State, 139 Fla. 542, 190 So. 691 (1939); David v. City of Jacksonville, 534 So.2d 784 (Fla. 1st DCA 1988); Whitley v. State, 265 So.2d 99 (Fla. 3d DCA), cert. den., 268 So.2d 906 (Fla.1972); Solutec Corp. v. Young & Lawrence Associates, Inc., 243 So.2d 605 (Fla. 4th DCA 1971).
Dr. Goss next argues that the trial court erred in giving Florida Standard Jury Instruction (Civil) 6.2(b) because "aggravation" of a pre-existing condition was not specifically pled. See, e.g., Carnival Cruise Lines, Inc. v. Nunez, 646 So.2d 831 (Fla. 3d DCA 1994), rev. denied, 658 So.2d 992 (Fla.1995). However, defense counsel did not object to the aggravation instruction on that ground, and thus this issue is not preserved for appellate review. Lynx Transportation v. Atkinson, 720 So.2d 600 (Fla. 5th DCA 1998).
We also agree with appellees that their counsel sufficiently established a basis for the giving of this instruction. See Holy Cross Hospital, Inc. v. Marrone, 816 So.2d 1113 (Fla. 4th DCA 2001) (plaintiff's allegation that doctor failed to timely diagnose her cancer causing an aggravation of her preexisting condition was a legally cognizable claim); Auster v. Gertrude and Philip Strax Breast Cancer Detection Institute, Inc., 649 So.2d 883 (Fla. 4th DCA 1995)(court erred in failing to give aggravation instruction; if jury determined that physicians negligently delayed diagnosis during the early stages of plaintiff's breast cancer, any aggravation or increase in the injury after that time would constitute a compensable injury); Miller v. Court, 510 So.2d 926 (Fla. 4th DCA 1987), rev. denied, 523 So.2d 576 (Fla.1988)(plaintiff was entitled to aggravation instruction where evidence was presented that plaintiff's coma resulted from physician's negligent medical treatment which aggravated her preexisting condition of diabetes).
Finally, we disagree that Dr. Goss was entitled to a directed verdict at the close of the plaintiffs' case for failure to establish he deviated from the accepted standard of care. This argument hinges on his position that he had not been informed about the deterioration of Mr. Permenter's condition and was unable to take the required remedial steps until nearly 11:00 a.m., rather than 9:30 a.m. or earlier. A motion for directed verdict should only *288 be granted if no view of the evidence could support a verdict for the non-moving party. The trial court must evaluate the evidence in a light most favorable to the nonmoving party, and indulge every reasonable inference possible in that party's favor. If there are conflicts in the evidence or different reasonable inferences can be drawn from the evidence, the issues should be submitted to the jury and not decided by the trial court as a matter of law.[1]
In this case there was contradictory testimony given by the nurse who evaluated and treated Mr. Permenter early in the morning (8:00 a.m.), and thereafter, plus her notes in the medical record. They provided a basis for the jury to have concluded, as it did, that Dr. Goss was sufficiently informed about Mr. Permenter's deteriorating condition to have been required by the established standard of care to take remedial steps much earlier than he did. There were two versions of events between 8:00 a.m. and 9:30 a.m. If the jury believed the nurse, then Dr. Goss deviated from the standard of care. Since the evidence was conflicting, the trial court properly denied the motion for directed verdict.[2]
Dr. Nichol-Sells argues the trial court erred in restricting her cross-examination of the plaintiffs' expert, Dr. Charash, regarding a prior disqualification of his medical opinion. Defense counsel asked Dr. Charash about having testified in other medical malpractice cases. Dr. Charash responded he had testified about many different areas of cardiology, but that his testimony "is exclusively to the standards that have been taught to me by my training and experience in internal medicine or cardiology." Defense counsel then said:
You've attempted to give testimony in a courtroom on internalactually emergency room practice, and you've been rejected by the Court?
Appellees' counsel objected to this last question. The judge sustained the objection on the ground defense counsel was seeking to impeach Dr. Charash on an irrelevant matter.
Dr. Nichol-Sells contends that Dr. Charash testified in his deposition that he had never been disqualified from rendering an opinion, but he also signed an affidavit in which he admitted his opinion was refused in one case. Dr. Nichol-Sells argues she was entitled to impeach Dr. Charash's veracity, depending on how he answered the question on cross-examination.
We agree with the trial judge that impeachment on this ground was improper because it related to an irrelevant matter. At best defense counsel could have established Dr. Charash was testifying in this *289 case as an expert in internal medicine and cardiology, against another cardiologist, and he had not been disqualified by any court from testifying as an expert in those fields. His opinion was rejected in one case, however, because it related to the standard of care of an emergency medicine physician.
Section 766.102(6)(a) provides that in malpractice actions against emergency room physicians, the court shall admit expert medical testimony only from physicians who have had substantial professional experience within the preceding five years while assigned to provide emergency medical services in a hospital emergency department. Thus an expert in a medical malpractice action against an emergency room physician must meet specific statutory requirements not applicable to other physicians. See Barrio v. Wilson, 779 So.2d 413 (Fla. 2d DCA 2000).
Whether Dr. Charash was qualified to give an opinion against an emergency room physician is clearly a collateral and irrelevant matter. Thus, the trial judge properly sustained the Permenters' objection to this line of questioning. See Cruse v. State, 588 So.2d 983 (Fla.1991), cert. denied, 504 U.S. 976, 112 S.Ct. 2949, 119 L.Ed.2d 572 (1992) (no abuse of discretion in refusing to permit defense counsel to cross-examine state expert about his allegedly incompetent medical evaluation in a different criminal case; that evaluation was a collateral matter); Erp v. Carroll, 438 So.2d 31, 37, n. 5 (Fla. 5th DCA 1983) (witness cannot be impeached about collateral or immaterial matters).
Accordingly, we affirm the judgments against the respective appellants, except for the portions thereof relating to calculation and award of interest. The judgments award interest from the date of the verdict. However, the Florida Supreme Court has recently determined that a personal injury plaintiff cannot recover interest from the date of the verdict. It must be from the date of the judgment. Amerace Corp. v. Stallings, 823 So.2d 110 (Fla. 2002). We remand this case to the trial court for the purpose of recalculating the interest awarded in these judgments.
AFFIRMED; REMANDED to Recalculate Interest on Judgments.
HARRIS and PALMER, JJ., concur.
NOTES
[1] Scott v. TPI Restaurants, Inc., 798 So.2d 907 (Fla. 5th DCA 2001); St. Johns River Water Management District v. Fernberg Geological Services, Inc., 784 So.2d 500 (Fla. 5th DCA), rev. denied, 805 So.2d 806 (Fla.2001).
[2] See Hughes v. Slomka, 807 So.2d 98 (Fla. 2d DCA 2002) (directed verdict for physician reversed where there was evidence, although contradictory, as to whether the physician timely diagnosed plaintiff's condition); Anderson v. Ewing, 768 So.2d 1161 (Fla. 4th DCA 2000), dismissed, 779 So.2d 269 (Fla.2001)(obstetrician not entitled to directed verdict where evidence was presented that he should have examined plaintiff as soon as he came on duty and had he done so, he would have realized that delivery was not going well and performed a caesarean section, thus avoiding damage to the mother and child); Singleton v. West Volusia Hospital Authority, 442 So.2d 235 (Fla. 5th DCA 1983) (directed verdict for hospital reversed where plaintiff presented evidence that had he been properly examined, hospital employees could have diagnosed his condition before his appendix ruptured).